UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LANCE D. C., | Case No. 3:19-cv-00728-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiff Lance D. C.[1] seeks judicial review of the Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and for the following reasons reverses the Commissioner's decision and remands the case for further administrative proceedings.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] All parties have consented to jurisdiction by Magistrate Judge under 28 U.S.C. § 636(c).

Page 1 – OPINION AND ORDER

*Procedural Background*

On January 15, 2016, Plaintiff protectively filed an application for a period of disability and disability benefits, alleging disability beginning June 1, 2006, due to lumbar spinal stenosis, neurogenic claudication in back, right foot drop, bilateral rotator cuff tears, nonallopathic lesion of the thoracic region, torn bicep in right arm, somatic dysfunction of upper extremities, and somatic dysfunction of the rib region. Tr. Soc. Sec. Admin. R. ("Tr.") 16-17, 59-60, ECF No. 12. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on January 25, 2018, at which Plaintiff appeared with his attorney and testified. A vocational expert, Paul K. Morrison, also appeared telephonically and testified. On May 23, 2018, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1955, was fifty-one years old on the alleged onset of disability, was fifty-five on his date last insured, and sixty-three years old on the date of the ALJ's decision. Tr. 28, 59, 70. Plaintiff has a college degree and has past relevant work as a physician's/surgical assistant. Tr. 18.

*The ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through December 31, 2010, and at step one found that he has not engaged in substantial gainful employment from his alleged onset date of June 1, 2006, through his date last insured "("DLI"). Tr. 15. At step two, the ALJ determined that Plaintiff's history of fracture at L3-L5 in 1998 status post-surgical repair is a severe impairment. Tr. 16. At step three, the ALJ determined that Plaintiff's severe impairment did not meet or equal the criteria of Section 1.04 or any other listed impairment. Tr.

Page 2 – OPINION AND ORDER

16. Reviewing all the evidence in the record, the ALJ determined that through the date last insured, Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work, except that he could occasionally climb ropes, ladders, or scaffolds, and he could occasionally stoop and crouch. Tr. 16. At step four, the ALJ determined that Plaintiff can perform his past relevant work as a physician's assistant. Tr. 18. The ALJ did not make alternative step five findings. Tr. 18. The ALJ found that Plaintiff was not disabled from June 1, 2006 through December 31, 2010, and therefore, denied Plaintiff's application for disability benefits. Tr. 19.

*Issues on Review*

Plaintiff contends the ALJ erred by: (1) failing to find his shortened left leg and radiculopathy severe impairments at step two; (2) failing to find that he meets or equals Listing 1.04 at step three; (3) failing to properly evaluate his subjective symptom testimony; (4) finding that he could perform his past relevant work at step four; and (5) failing to reach step five. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error or, alternatively, that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations omitted); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at

Page 3 – OPINION AND ORDER

675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I. The ALJ Did Not Commit Harmful Error at Step Two

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Murray v. Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1129 (D. Or. 2017); 20 C.F.R, §§ 404.1509, 404.1520(a)(4)(h). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The step two threshold is low; "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting step two is a "de minimus screening device to dispose of groundless claims." (internal citation omitted).)

In the decision, the ALJ found that Plaintiff's history of fracture at L3-L5 in 1998 status post-surgical repair was a severe impairment at step two. Tr. 16. Plaintiff argues that the ALJ erred in failing to find his shortened leg, with left iliac crest high, and radiculopathy SI enthesopathy, and sacroiliitis with ligament instability, also were severe impairments. The court disagrees.

Here, the ALJ resolved step two in Plaintiff's favor, finding his history of L3-L5 fracture a severe impairment and continuing with the sequential evaluation. Therefore, even assuming arguendo the ALJ erred at step two, the error is harmless. *Buck*, 869 F.3d at 1049 (noting that an

Page 4 – OPINION AND ORDER

error at step two was harmless because it was resolved in Buck's favor and his impairments and limitations were considered fully when evaluating RFC); *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005) (holding any error at step two harmless because it was resolved in claimant's favor and restrictions considered at remaining steps). To the extent that Plaintiff alleges the ALJ erred in evaluating the medical evidence of his physical impairments at the remaining steps in the sequential evaluation and when considering his RFC, the court addresses those arguments below. In short, even if the ALJ erred in failing to identify shortened left leg and SI radiculopathy as severe, the error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ commits reversible error at step two only where severe impairment erroneously excluded and that impairment causes functional limitations that are not accounted for in the RFC).

II.   Step Three

At step three, the ALJ must assess whether the claimant has an impairment or combination of impairments meets or equals an impairment listed the in Appendix to the federal regulations (the "Listings"). 20 C.F.R. 404, subpart P, Appendix 1. The Listings describe impairments that are so severe that they are presumptively disabling. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "Where an ALJ determines at Step Three that a claimant's impairment does not meet a listing, the ALJ must provide adequate support for that decision." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)). If the ALJ fails to make detailed findings at step three, the ALJ errs "unless [the ALJ] adequately discussed the evidence supporting [the] decision elsewhere in the hearing decision." *Patricia C. v. Saul*, Case No. 19-cv-00636-JM-

Page 5 – OPINION AND ORDER

JLB, 2020 WL 4596757, at *15 (S.D. Cal. Aug. 11, 2020) (citing *Kennedy*, 738 F.3d at 1178); *see also Jennifer B. v. Berryhill*, No. 3:18-cv-05046 JRC, 2018 WL 6178220, at *2 (W.D. Wash. Nov. 27, 2018) ("Even if an ALJ makes a boilerplate finding that an impairment does not meet a listing, [the] [c]ourt will not reverse where the ALJ made sufficiently detailed findings in other portions of [the] decision.").

> Listing 1.04A requires a finding of disability if the claimant establishes the following:
>
> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. 404, subpart P, App. 1, § 1.04(A). All criteria must be present simultaneously for at least twelve months. 20 C.F.R. § 404.1525(c)(4).

> In the decision, the ALJ provided a cursory step three analysis consisting of the following:
>
> [Plaintiff's] impairment did not meet the criteria of section 1.04 or any other listed impairment. During the period at issue, evidence did not establish compromise of a nerve root as described in the listing. No medial consultant has opined his impairment was medically equal to a listed impairment.

Tr. 16.

Plaintiff argues that the record contains evidence of nerve root compromise, highlighting a May 22, 2014 MRI. However, as the Commissioner correctly contends, the May 2014 MRI is over three years *after* Plaintiff's date last insured, and therefore fails to carry his burden of establishing compromise of a nerve root during the relevant period as required for presumptive disability under the listing criteria.

Recognizing this problem, Plaintiffs contends that ALJ erred by failing to call a medical advisor to testify at the hearing to assist with assessing the onset of disability pursuant to SSR 83-

20. SSR 83-20 requires an ALJ to call a medical expert where the "record is lacking and ambiguous as to the onset date of disability." *Diedrich v. Berryhill*, 874 F.3d 634, 638-39 (9th Cir. 2017); *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (explaining that SSR 83-20 requires ALJ to call medical advisor where medical evidence is not definite and inferences need to be made).

Plaintiff argues that SSR 83-20 applies because the ALJ simply found that he failed to establish nerve root compromise during the relevant period. Plaintiff points to medical records showing that his spinal stenosis satisfies bulk of the listing criteria prior to his DLI, and that the 2014 MRI confirms nerve root compromise. Plaintiff argues that he cannot "go back in time to obtain an MRI prior to his date last insured," and that pursuant to SSR 83-20, the ALJ was required to call a medical advisor to help assess an onset date and erred in failing to do so. The Commissioner responds that SSR 83-20 does not apply because the question of when Plaintiff became disabled did not arise. Plaintiff is correct.

It is unclear from the ALJ's decision whether it accounted for Plaintiff's spinal canal stenosis and, thus, the condition met any of the Listing 1.04 criteria.[3] The ALJ offered no detailed analysis at step three, and the ALJ's discussion of the medical evidence later in the sequential evaluation omits any discussion of the 2014 MRI. The 2014 MRI shows "severe spinal canal stenosis from L1-2 through L4-5." Tr. 228. The 2014 MRI definitively shows "[t]he cauda equina appears impinged at multiple levels." Tr. 228. The 2014 MRI reveals numerous locations of severe disk collapse, including at L1-2, where the "CSF is completely effaced, and the nerve roots appear compressed centrally." Tr. 227. The imaging shows that at L2-3 "disk bulge

---

[3] Plaintiff contends that he meets or equals Listing 1.04A. On remand, the ALJ is to consider whether Plaintiff meets or equals any subsection of Listing 1.04.

Page 7 – OPINION AND ORDER

with endplate osteophytes and sublaxation" contributing to "severe spinal canal stenosis" and "CSF is completely effaced, and the nerve roots appear compressed centrally." Tr. 227. And, at L3-4 Plaintiff has severe disk collapse, creating spinal stenosis, with "nerve roots potentially compressed." Tr. 227. Admittedly, the May 22, 2014 MRI occurred several years after Plaintiff's December 31, 2010 date last insured. However, given the severity of the 2014 MRI's findings, the ALJ was required to explain why such highly probative evidence was rejected. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984); *Lee v. Colvin*, 80 F. Supp. 3d 1137, 1148 (D. Or. 2015). The ALJ's failure to discuss the 2014 MRI in any fashion is error.

The court further observes that the medical records from Dr. Yankee, Plaintiff's osteopathic provider from May 2007 through February 2011 and comprising the bulk of the available records from the relevant period, are of limited value. Dr. Yankee's treatment notes are handwritten and contain few, if any, clinical observations or objective medical findings. Tr. 502-30. The treatment provided by Dr. Yankee included osteopathic manipulations, Platelet Rich Plasma injections, and medication management with opioid painkillers and methadone. Tr. 502-30. At the hearing, Plaintiff and his attorney testified that Dr. Yankee lost his medical license during the period under review, Tr. 34, 36-37, but that eventuality does not erase that Dr. Yankee's records revealed Plaintiff complained of ongoing, severe low back pain. Tr. 502-30.

Additionally, what few medical records exist outside of Dr. Yankee's examinations during the relevant period similarly show that Plaintiff has struggled with severe back pain and attendant limitations for years, and that he has not worked due to pain since his alleged onset date. For example, a September 25, 2009 treatment note from David Sibbell, M.D., reveals muscle weakness, decreased reflexes, decreased range of motion, and difficulty walking. Tr. 541-43.

Page 8 – OPINION AND ORDER

Dr. Sibbell noted that Plaintiff complained of a long history of low back pain, "made worse by severe deactivation & deconditioning, aversion of activity, skin lesions caused by his heating pad and lack of resources." Tr. 544. Dr. Sibbell referred Plaintiff to Charles Webb, D.O., recommended that Plaintiff obtain a disability attorney should he choose to re-file for disability, and that he obtain an MRI should he demonstrate any neurological losses. Tr. 544-45.

The record further shows that when Plaintiff followed up with Dr. Webb on October 2, 2009, he described constant pain that is either dull or shooting with muscle spasms. Tr. 626. Plaintiff described that he experiences numbness in his left leg when his symptoms are "really bad" and that he had been without pain medication for two weeks, which increased his muscle spasms. Tr. 626. Plaintiff was observed to walk with a cane and have an antalgic gait without the cane. Tr. 628. Plaintiff could not heel- or toe-walk or perform flexion or extension of his back secondary to pain, and he leaned on the table due to pain. Tr. 628. Plaintiff had positive straight leg raise on the left, with a positive Faber test. Tr. 628. In an October 15, 2009 treatment note, Plaintiff described having increased back pain radiating down to his calves, continued back spasms, that he was unable to stand to urinate, and that he was unable to afford the Cymbalta prescribed at his previous visit. Tr. 629. At that visit, Plaintiff again was unable to perform any flexion tests secondary to pain. Tr. 631. Thus, the record contains evidence of severe low back pain during the relevant time frame, the etiology of which was confirmed much later by the 2014 MRI.

The court concludes that the ALJ erred in failing to make sufficiently detailed findings at step three (or later in the decision) concerning whether Plaintiff satisfied Listing 1.04. Additionally, the court concludes that in light of the 2014 MRI, the ALJ erred by failing to call a medical advisor to testify about an onset date. Here, Plaintiff did not describe a sudden onset of

Page 9 – OPINION AND ORDER

symptoms, but rather worsening over time, as is typical for spinal stenosis. *See Diedrich*, 874 F.3d at 639 ("Sometimes, the onset of disabilities occurs all at once, and the date of onset is clear. For example, when a claimant is permanently injured in a car wreck, there is rarely a dispute over the date of the crash. But sometimes conditions build slowly over time. In such cases, it helps to have medical expertise to determine when the symptoms became severe enough so that the claimant became disabled under Title II."); *see also* www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited October 18, 2020) (discussing spinal stenosis generally). Additionally, as in *Diedrich*, there is a lack of objective medical evidence in the record. *Diedrich*, 874 F.3d at 639 (noting that large gaps in the medical record with the alleged onset and date last worked in the distant past, ALJ erred in failing to call medical advisor to assess onset date). Because objective medical imaging from the relevant time period simply does not exist, the ALJ erred in failing to call a medical advisor to assist with determining an onset date.

III.    The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of

Page 10 – OPINION AND ORDER

the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that he lives with his wife and grown son. Tr. 29. He stated that he no longer drives, that he stopped working in 2006, and that he uses mass transit to attend appointments or has someone drive him. Tr. 30-31. Plaintiff testified that he has a Bachelor of Science degree and obtained a doctoral degree. Tr. 31. Plaintiff worked as a physician's assistant assisting with surgeries from 2001 to 2006, when he stopped working due to pain. Tr. 32-33. Plaintiff testified that when he was assisting with surgeries, he was standing for twelve to sixteen hours per surgery. Tr. 41. Plaintiff described moving patients from a gurney to the operating table, and that he would also need to move the instrument case, which weighs between seventy-five and 100 pounds. Tr. 41.

Plaintiff stated that he last looked for work in 2007 or 2008, but could not find comparable work. Tr. 33. Plaintiff testified that the pain in his back and legs prevents him from working. Tr. 33. Plaintiff described that during the period under review, he used a cane because he could not stand up straight. Tr. 33.

Plaintiff testified that he had surgery in 2016 to replace four discs in his back, that he developed deep vein thrombosis ("DVT") in his femoral arteries, and that he was placed on blood

Page 11 – OPINION AND ORDER

thinners. Tr. 34-35. Plaintiff stated that he now suffers from piriformis syndrome. Tr. 35. Plaintiff testified that he would sometimes "fiddle-faddle around" in his woodshop in the garage, refinishing furniture or making little things to keep himself busy. Tr. 43-44. Plaintiff stated that by 2008 he could no longer walk the dog to the mailbox. Tr. 44. Plaintiff indicated that he was on methadone for six months before Dr. Yankee lost his medical license, and he was then forced to abruptly end methadone, a process he described as the "worst experience of his life." Tr. 46.

In the decision, the ALJ found that Plaintiff's subjective symptoms complaints were not entirely credible, citing three reasons: (1) Plaintiff's daily activities were inconsistent with his alleged symptoms; (2) his incorrect and unprescribed use of a cane; and (3) unexplained gaps in his treatment history. Plaintiff argues that the ALJ failed to identify clear and convincing reasons for discounting her subjective symptom testimony. After careful examination, the court finds that the ALJ's reasons are neither clear nor convincing.

Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if they contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020). However, a claimant does not need to be utterly incapacitated to receive disability benefits, and a claimant's ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *Molina*, 674 F.3d at 1112-13 (observing that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In the decision, the ALJ found that Plaintiff's ability to work in his woodshop, and reports

Page 12 – OPINION AND ORDER

of working in the yard, painting, and working on his truck inconsistent with his allegations of total disability. Tr. 18. The ALJ also observed that more recent records indicate an active lifestyle, despite failing to testify to any improvement in his functioning since his date last insured. Tr. 18. The ALJ noted that in November 2008, Plaintiff reported to Dr. Yankee that he could walk a mile per day. Tr. 17, 518.

These minimal activities cited by the ALJ do not indicate that Plaintiff could engage in a forty-hour work week during the period under review. Plaintiff's ability to "fiddle-faddle" in his woodshop for a couple of hours, making small things, is the type of activity the Ninth Circuit has repeatedly determined do not contradict claims of disability. Additionally, there is no evidence describing what type of painting Plaintiff performed, or what work he did in the yard. Even if Plaintiff reported to Dr. Yankee that he was able to walk a mile in November 2008, by September 2009, he reported to Dr. Sibbell that he was mostly recumbent, had difficulty walking, and that pain interrupted his sleep. Tr. 542-45. Similarly, in October 2009, Dr. Webb observed that Plaintiff was walking with a limp and leaning forward on the table due to pain. Tr. 628. Occasional symptom-free periods and cycles of improvement are not inconsistent with disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (noting that cycles of improvement, especially with mental health impairments, are not inconsistent with disability). Thus, Plaintiff's participation in minimal activities of daily living is not a clear and convincing reason to reject his subjective symptom testimony.

The ALJ also discounted Plaintiff's subjective symptom testimony because of his inconsistent and unprescribed use of a cane. Upon careful review, the court finds that the ALJ's reasoning is not specific, clear or convincing on this point. While Dr. Sibbell's records indicate

Page 13 – OPINION AND ORDER

that Plaintiff was using the cane on the wrong foot, Dr. Sibbell did not suggest that his use of a cane was unwarranted. Tr. 542-45. Additionally, Dr. Webb's treatment notes in October 2009 also reflect that he had an antalgic gait, both with and without using the cane. Tr. 628. The ALJ also appeared to discount Plaintiff's alleged difficulty walking because his recent treatment records reflect a normal gait without use of an assistive device. Tr. 17. However, the ALJ's findings fail to account for Plaintiff's September 2016 surgery to replace four vertebrae in his back. Tr. 334, 346. Thus, Plaintiff's current ability to walk without an assistive device does not undermine his earlier use of a cane. Therefore, the court finds that the ALJ's second rationale is not supported by substantial evidence in the record as a whole and is not a specific, clear or convincing reason for discounting Plaintiff's subjective symptom testimony. *See De Guzman v. Astrue*, 343 F. App'x 201, 210 (9th Cir. 2009) (holding ALJ erred in discounting claimant's testimony based on use of walker where it was prescribed and supported by record evidence).

The ALJ also discounted Plaintiff's subjective symptom testimony because it is not entirely consistent with his treatment record, with unexplained gaps in treatment. Tr. 17. Gaps in a treatment regimen may provide a clear and convincing reason to discount subjective symptom testimony. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The ALJ noted that Plaintiff sought treatment in 2007, months after his alleged onset date. Additionally, the ALJ highlighted a treatment gap from April 2008 until September 2009.

Plaintiff responds that he should not be penalized for his lack of care due to being uninsured. Here, Plaintiff's contention that his gaps in treatment can be explained by a lack of financial resources is supported by substantial evidence in the record. For example, in September 2014, Plaintiff's primary care physician Shagufta A. Hasan, M.D., indicated that Plaintiff's wife recently secured a job and that he "will wait for the good insurance" so he can "go for the surgery."

Page 14 – OPINION AND ORDER

Tr. 435. And, in 2015, Dr. Hasan indicated that Plaintiff had good insurance in place, and would ask if Plaintiff would agree to back surgery. Tr. 387. Dr. Sibbell observed in September 2009 that Plaintiff lacked resources and encouraged him to re-file for disability with the assistance of an attorney, an observation the ALJ failed to discuss. Tr. 544. As noted above, Dr. Yankee's treatment notes are handwritten and were obtained by Plaintiff's attorney who retrieved them in person. Tr. 36. And, despite years of reporting significant pain to Dr. Yankee, those records fail to reflect any referrals for diagnostic imaging, x-rays, or other testing. Thus, the court concludes that on this record, Plaintiff's assertion that he was unable to afford additional medical care is supported by substantial evidence in the record and reasonably explains the gaps in his course of treatment. Therefore, the court finds that the ALJ's third rationale is not clear or convincing.

In summary, the court finds that the ALJ erred by failing to articulate specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

IV.    The ALJ's RFC Is Not Supported by Substantial Evidence

In light of the court's determination that the ALJ erred in evaluating Plaintiff's subjective symptom testimony, the ALJ's RFC fails to include all of Plaintiff's functional limitations. It follows that the ALJ's step four finding that Plaintiff can perform his past relevant work is not supported by substantial evidence.

V.    Remedy

In light of the court's determination that the ALJ has committed reversible error by discounting Plaintiff's subjective symptom testimony and by failing to call a medical advisor at step three, the court must therefore determine whether remand should be for further proceedings or for an immediate award of benefits.

The decision whether to remand for further proceedings or for the immediate payment of

Page 15 – OPINION AND ORDER

benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Plaintiff argues that an award for an immediate payment of benefits is required because when his testimony is properly credited, he is limited to sedentary work, and is presumptively disabled under Medical-Vocational Rule 201.14 as of his alleged onset date, or under Medical-Vocational Rule 202.06 as of his fifty-fifth birthday in 2010. Pl.'s Reply at 9, ECF No. 15; *see* 20 C.F.R. Pt. 404, subpt P. App. 2, Tables 1-2 (commonly referred to as "the Grids"). The Medical-Vocational Rules direct a finding of disability where a claimant is limited to light or sedentary work, is of advanced age (age fifty-five and older), has a high school education or greater, whose past work was skilled or semi-skilled, and does not have transferrable skills. The Grids at Rules 201.14, 202.06.

Plaintiff is correct that the Medical-Vocational Rules likely direct a finding of disability. Carefully reviewing Plaintiff's hearing testimony shows that in 2008, he could no longer walk to the mailbox (Tr. 44), and in 2010, he could not walk without a cane and could not stand up straight (Tr. 33). Plaintiff also testified that he stopped working in 2006 because he could no longer stand

Page 16 – OPINION AND ORDER

for the duration of the twelve-hour surgeries. Tr. 31, 33, 41. And, at the hearing, the vocational expert testified that Plaintiff's past relevant work is that of a physician's assistant which is classified as light work, but as performed by Plaintiff, he was surgical assistant working at a medium exertional level, and that the jobs fell under the same Department of Transportation classification. Tr. 47-49. The vocational expert also testified that the physician's assistant occupation does not have any transferrable skills to sedentary work. Tr. 49. The vocational expert also testified that if a person was limited to standing for six of eight hours in a workday, the person would be precluded from working as a surgical assistant, but not as a physician's assistant. Tr. 50. Thus, when crediting Plaintiff's hearing testimony, it appears that Plaintiff would be limited to at least light work, and perhaps sedentary work.

However, even if the court were to credit Plaintiff's testimony as true, the court is unable to determine when Plaintiff became disabled. Social Security regulations make clear that determination of a disability onset date is a complex and fact-specific inquiry. As discussed above, the ALJ erred in failing to call a medical advisor to assist with determining an onset date. SSR 83-20, *available at* 1983 WL 31249, at *2-3. As in many claims, "the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." *Id.* at *1; *see also House v. Colvin*, 583 F. App'x 628, 629-30 (9th Cir. 2014). There is nearly a four-year difference between Plaintiff's alleged onset date and his fifty-fifth birthday.

Therefore, the court concludes that the case must be remanded for further proceedings because the date on which Plaintiff's disability began is unresolved. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir.2010) (concluding that remand for an award of benefits under the credit-as-true rule was unwarranted due to the "outstanding issue" of "when Luna's disability began").

Page 17 – OPINION AND ORDER

Accordingly, this case is remanded for further administrative proceedings. On remand, the ALJ shall: (1) reevaluate step three with the assistance of a medical advisor to consider all medical evidence including the 2014 MRI, and provide an opinion as to the nature, severity, and limiting effects of Plaintiff's medical impairments and date of onset; (2) conduct a *de novo* review of medical evidence of record; (3) offer Plaintiff a *de novo* hearing, with vocational testimony, if necessary; and (4) conduct any additional necessary proceedings.

## Conclusion

Based on the foregoing, the Commissioner's decision that Plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED this 19th day of October, 2020.

JOHN V. ACOSTA
United States Magistrate Judge